UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>              Plaintiff,<br><br>    v.<br><br>ALEJANDRO ALVAREZ,<br><br>              Defendant. | Case No. 3:20-cr-00086-WHO-1<br><br>**ORDER DENYING MOTION TO SUPPRESS AND MOTION TO DISCLOSE CONFIDENTIAL INFORMANT**<br><br>Re: Dkt. Nos. 27, 28 |

Defendant Alejandro Alvarez is charged with knowingly possessing with the intent to distribute 500 grams of a mixture or substance containing methamphetamine. In the motion to suppress now pending before me, Alvarez challenges four search warrants issued by state magistrate judges and requests a *Franks* hearing. He also moves to disclose the identity of the confidential informant ("CI") who worked with the San Francisco Police Department ("SFPD") during the investigation of an individual known as "Chewy." Alvarez's motions overemphasize of the importance of the CI to the probable cause determination. Far from being crucial, the information he or she provided merely led officers to initiate an independent investigation. The results of that investigation provided a substantial basis for the magistrates' probable cause determinations and further supported a finding that the CI was reliable. As set forth below, I will deny both of Alvarez's motions.

## BACKGROUND

### I. FACTUAL HISTORY

In August 2017, the SFPD initiated an investigation in an individual known as "Chewy" based on information received from a CI. Fakhoury Decl. Ex. A [Dkt. No. 26-1]. Officer Michael Tursi met with the CI within three days of August 16, 2017. *Id.* at 4. The CI told Tursi that an

individual named "Chewy" had told him/her that "he could produce any quantity of methamphetamine or heroin [CI] wanted." *Id.* The CI described Chewy as Latin, approximately 40 years old, 5' 10" and heavy set. *Id.* According to the CI, he/she had met Chewy in person once during an initial drug sale, and since then, he/she had purchased drugs through Chewy by calling and receiving a location. *Id.* at 4–5. Once at that location, the CI called Chewy again, and five to ten minutes later an unknown Latin male arrived on foot to conduct the transaction. *Id.* Based on the CI's information, the SFPD decided to investigate Chewy and the unknown Latin male and conduct a controlled purchase of drugs. *Id.* at 5.

### A. October 17 and 26, 2017 Warrants for Cell Phone Location Information

The October 17 and 26 warrants contained the following information about two controlled buys that officers conducted with the CI between August and October 2017. Within five days of August 23, 2017, officers met with the CI and gave him/her marked city funds. *Id.* at 5. The CI called Chewy by dialing (415) 571-5095, and officers listened to the conversation on speakerphone. *Id.* The male voice on the phone, which the CI identified as Chewy's, told the CI to go to a location in San Francisco. *Id.* The officers watched the CI walk to the area Chewy named, and approximately ten minutes after he/she arrived, the CI informed Tursi by phone that the unknown Latin male was almost there. *Id.* Officers then saw a man approach the CI, engage in conversation, and then complete a hand-to-hand transaction. *Id.* The contents the CI received tested presumptively positive for the presence of heroin. *Id.*

For the second buy, within five days of October 4, 2017, officers again met with the CI, who gave them a new number for Chewy: (415) 724-2968. *Id.* The CI called the number and received a location in San Francisco. *Id.* The CI told officers that the male voice they heard on the phone was Chewy's. *Id.* Officers again gave the CI marked city funds and drove him to the named location, where they maintained surveillance. *Id.* After the CI had been in the location for about 10 minutes, the same unknown Latin male approached, and a hand-to-hand transaction occurred. *Id.* The contents tested presumptively positive for the presence of heroin. *Id.* at 6. When Tursi met with the CI again on October 16, 2017, the CI confirmed that (415) 724-2968 was Chewy's number. *Id.*

Based on Tursi's training and experience, he suspected that Chewy was the source of the drugs and that the unknown Latin male was his runner. *Id.* A state magistrate judge approved a warrant to search the cell site location information of the T-Mobile phone number (415) 724-2968. The October 26 warrant affidavit contained the same information as the October 17 affidavit and requested an extension of time to search. *See* Fakhoury Decl. Ex. B [Dkt. No. 26-2].

### B. October 30, 2017 Warrant for Alvarez and 1253 Sanchez Street

Monitoring of the cell site location information revealed that the phone was frequently located at one intersection in San Francisco, where Tursi recognized the 1253 Sanchez Street apartment building.[1] Fakhoury Decl. Ex. C [Dkt. No. 26-3] 5. On or about October 24, 2017, officers surveilled the area and saw an individual who matched the CI's description of Chewy exit 1253 Sanchez Street and lock the door. *Id.* at 5. Tursi called Chewy's number (415) 724-2968 and observed the individual take a phone out of his pocket and put it to his ear. *Id.* Through his own phone, Tursi heard someone say hello. *Id.* When Tursi hung up, the individual hung up. *Id.* Officers also took photos of the individual, whom the CI later identified as Chewy. *Id.* at 5–6.

Based on Tursi's training and experience, he knew that people who sell heroin buy it in bulk and maintain it in their residences. *Id.* at 6. In the October 30, 2017 warrant, Tursi described the controlled buys that led to the cell site location warrants and the information described above in the preceding paragraph. *Id.* at 3–5. A state magistrate judge authorized a warrant to search the person suspected to be Chewy and 1253 Sanchez Street, his suspected residence.

### C. Searches of Alvarez and 1253 Sanchez Street

On November 1, 2017, officers executed the warrant to search Chewy and 1253 Sanchez Street. They observed Alvarez exit 1253 Sanchez Street, lock the door, and walk away. Fakhoury Decl. Ex. D [Dkt. No. 26-4]; Tursi Decl. ISO MTS [Dkt. No. 33] ¶ 17. Officers approached him on foot. *Id.* When two officers announced themselves as police, Alvarez began to run away from them and toward Tursi, who drew his weapon and ordered Alvarez to get on the ground. *Id.* ¶¶ 17–18. Before complying, Alvarez threw a brown paper bag and a cigarette box on the ground.

---

[1] Tursi had previously executed a search warrant at the building.

3

1  *Id.* ¶ 18. Officers placed him in handcuffs, and Tursi seized the brown paper bag and cigarette box, both of which contained suspected methamphetamine. *Id.* Officers then placed Alvarez under arrest. *Id.*

Officers searched 1253 Sanchez Street using two keys found on Alvarez's person. Fakhoury Decl. Ex. C at 2; Fakhoury Decl. Ex. D at 7. They discovered methamphetamine, heroin, pay/owe sheets, and over $46,000 in cash. *Id.*

### D. November 7, 2017 Warrant for Phones Found on Alvarez's Person

On November 7, 2017, a state magistrate judge approved a warrant to search two phones seized from Alvarez's person. Fakhoury Decl. Ex. F [Dkt. No. 26-6]. The warrant "attached and incorporated the Statement of Probable Cause" by Tursi and authorized the search of a Black Samsung phone in a red case and a Silver Samsung phone in a black case for a number of categories of information during the period from August 24, 2017 to November 1, 2017.[2] *Id.* Tursi's affidavit provided background on the investigation into Chewy and described the discovery of drugs and money found at 1253 Sanchez Street. *Id.* at 4–5. It noted the various ways in which cell phones can be used, including as part of criminal activity. *See id.* at 5–6. Finally, Tursi's affidavit stated, "Based on my training and experience and the information contained in this affidavit, I believe Alejandro Alvarez is involved in the sales and distribution of methamphetamine and heroin and that evidence of that criminal activity can be found in the stored electronic data accessible from the target cellular telephone seized from him." *Id.* at 7.

## II. PROCEDURAL HISTORY

Alvarez was initially charged in San Francisco County Superior Court. On January 22, 2020, the federal government filed a criminal complaint, at which point the San Francisco District Attorney dismissed its case. *See* Complaint ("Compl.") [Dkt. No. 1]. The Grand Jury returned an indictment on February 20, 2020. Dkt. No. 14.

---

[2] Specifically, the warrant authorized the search of Mobile Cellular Device Identification Information, Stored Contact List Phone Book Information, Stored Phone Logs, Stored Text Communications, Stored Voice Mail, Stored Digital Image and Videos, Stored Audio Files, Stored Application Information, Stored Digital Application Files, Stored Wireless and Wired Log, Stored Geographic Location Data, and Removable Storage Medium. Fakhoury Decl. Ex. F at 1–2.

4

Tursi's affidavit in support of the federal complaint included new information about the CI. Compl. ¶ 11 n.1. The CI had ten-year-old convictions for a DUI and for driving without a license. *Id.* In 2015, he/she was arrested with methamphetamine and heroin. *Id.* After being found in possession of drugs again in 2017, he/she began working with officers in consideration of pretrial charges and, later, for compensation. *Id.* As a result of that cooperation, the CI was not charged with the 2017 drug possession. *Id.* In 2018, he/she pleaded guilty to possession of a controlled substance for sale stemming from the 2015 arrest but received no probation. *Id.*

Alvarez filed the two motions before me now on June 16, 2020, and I heard argument on July 23, 2020. Dkt. Nos. 27, 28, 39.

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution, which protects against unreasonable searches and seizures, provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. "Probable cause for a search requires a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of the circumstances." *United States v. Grant*, 682 F.3d 827, 832 (9th Cir. 2012) (internal quotation marks omitted). Reviewing courts are obligated to give deference to a magistrate judge's determination of probable cause. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). The magistrate judge's determination should be upheld as long as the affidavit provided "a substantial basis" for determining that probable cause existed. *Id.* at 239.

## DISCUSSION

**I.  MOTION TO SUPPRESS**

Alvarez challenges the four warrants described above and along with his November 1, 2017 arrest. He further requests a *Franks* hearing into the CI's reliability, arguing that Tursi recklessly omitted information from the affidavits supporting the search warrants. Motion to Suppress ("MTS") [Dkt. No. 27].

5

**A. Search Warrants**

    **1.      October 17 and 26, 2017 Warrants for Cell Site Location**

Alvarez first challenges the October 17 and 26, 2017 search warrants for cell phone location information. MTS 9–12; *see* Oppo. MTS 8 n.2 ("The government assumes, without conceding, that a warrant supported by probable cause was required to obtain the cell phone location data."). He argues that the warrants were unsupported by probable cause because only the CI's information connected Chewy to the drug buys that law enforcement observed, and the affidavits failed to include facts establishing the CI's reliability and truthfulness. MTS 10–12.

The "credibility and basis of knowledge" of an informant are two factors in the totality of the circumstances test for probable cause. *United States v. Meling*, 47 F.3d 1546, 1554–55 (9th Cir. 1995) (noting that "neither of these factors alone determines what weight should be given the informant's tips"). The information in an affidavit "should support an inference that the source was trustworthy and that the source's accusation of criminal activity was made on the basis of information obtained in a reliable way." *Frimmel Mgmt., LLC v. United States*, 897 F.3d 1045, 1052 (9th Cir. 2018) (internal quotation marks omitted). Reliability "may be demonstrated through independent police corroboration of the information provided by an informant." *United States v. Bishop*, 264 F.3d 919, 925 (9th Cir. 2001); *see United States v. Artis*, 919 F.3d 1123, 1132 (9th Cir. 2019) (noting that an affidavit lacked facts about the informant's basis of knowledge, past reliability, or "any information corroborating what the informant said").

There was a substantial basis for the magistrates' probable cause findings for both of the October 2017 cell site location search warrants. The affidavits included information that the CI provided to officers about Chewy and his manner of conducting drug transactions though a runner. Although there was no evidence of the CI's history of reliability and truthfulness, the two controlled buys that officers observed were sufficient to corroborate the CI's information about Chewy. In each of the phone calls, the individual on the phone provided a location, and then a hand-to-hand exchange occurred at that location with the same unknown Latin male. *See Artis*, 919 F.3d at 1135 (upholding probable cause determination because tip regarding the defendant's phone number was corroborated when that number called a known associate of the defendant).

6

The officers' independent investigation, detailed in the affidavits, sufficiently corroborated the CI's information and provided a substantial basis for the magistrate's determination that there was probable cause to search the cell phone number that was the nexus to drug transactions.

Alvarez argues that the controlled buys were not enough corroboration because only the CI's word connected those transactions to Chewy; all the officers observed was a drug sale by someone who was not Chewy. MTS 10–11; Reply MTS 2–3. The problem with this challenge is that the warrants authorized law enforcement to search only cell site location information. Irrespective of what the CI told the officers, the individual who answered the phone at (415) 724-2968 gave directions for where to get drugs, and officers then observed a drug transaction occur at that location. Accordingly, the affidavits included information directly from the officers that created a nexus between the phone number and evidence of drug crimes. It was only in the next phase of officers' investigation that a greater connection to Chewy was required. In any event, the fact that the drug transactions occurred in the same general manner that the CI described—phone call, location, drug sale at that location—was enough to allow the magistrate judges to find that the CI was a reliable source and therefore to credit the additional information that he/she provided about Chewy.[3]

### 2. October 30, 2017 Warrant for Alvarez and 1253 Sanchez Street

Alvarez next argues that the October 30, 2017 warrant to search him and 1253 Sanchez Street were not supported by probable cause.[4]

"When a magistrate judge issues a search warrant for a residence, he must find a 'reasonable nexus' between the contraband sought and the residence." *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002). "[I]n narcotics cases evidence is likely to be found where the dealers live." *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002) (internal quotation marks omitted). When an individual is suspected of supplying drugs, it

---

[3] Although the affidavits do not indicate that the CI made a second phone call to Chewy from the location of the transaction (as the he/she had described to officers prior to their investigation), the manner of the transactions was sufficiently similar to allow the magistrates to find the CI credible.

[4] I do not address his argument that the warrant was the fruit of the unlawful cell site location searches because I have concluded that those searches were lawful.

7

"ma[kes] sense to look for drugs at his apartment." *Id.*

There was a substantial basis for the magistrate judge's finding that there was probable cause to search Alvarez and 1253 Sanchez Street. Starting on October 21, 2017, the "majority" of cell phone locations were in the vicinity of 1253 Sanchez Street.[5] When officers conducting surveillance observed a man resembling the CI's description of Chewy exit the building and lock the door, Tursi called (415) 724-2968.[6] When Tursi called, the man put his phone to his ear, and Tursi heard "hello." When Tursi hung up, the man hung up. The CI later identified the man as Chewy using photos the officers took of him. From this information, it was reasonable for the officers—and the magistrate—to conclude that the individual seen outside of 1253 Sanchez Street was Chewy and that he lived at that address.[7] Further, it is reasonable as a general matter to conclude that drug traffickers store drugs at their residences, and it was all the more reasonable on these facts because Chewy conducted transactions through a runner. *See United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) ("A magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense."). Given the controlled buys, which at that point were independently tied to 1253 Sanchez Street and the individual seen there, it was reasonable to conclude that searching both would yield evidence of drug crimes.

### 3. November 7, 2017 Warrant for Phones Found on Alvarez

Alvarez challenges the November 7, 2017 warrant to search the cell phones discovered

---

[5] Tursi's past familiarity with the building as a result of a 2013 investigation is relevant only insofar as it allowed him to identify the location of the cell phone; it is not a fact that supports a probable cause finding in this case.

[6] With respect to the fact that the individual matched the CI's description of Chewy, I acknowledge Alvarez's critique regarding the age and race demographics of the neighborhood. *See* MTS 14 n.9. But the timing of the phone call is enough to tie that individual to the suspect phone number, and by extension, the drug transactions.

[7] Contrary to Alvarez's arguments, the factors outlined in *Grandberry* are inapplicable. *See* MTS 15. Those factors go not to the sufficiency of a warrant affidavit but rather to "determining whether a defendant lived at a given location and whether '[p]olice or parole officers may lawfully conduct searches of parolees or their residences *without satisfying the Fourth Amendment's warrant* requirement." *United States v. Graham*, No. 16-cr-00538-JSW-1, 2017 WL 11461038, at *3 (N.D. Cal. Oct. 12, 2017) (quoting *United States v. Grandberry*, 730 F.3d 968, 973 (9th Cir. 2013) (emphasis added)).

when he was arrested on the grounds that it was not supported by probable cause and was not sufficiently particularized.[8]

### a.  Probable cause

First, the affidavit provided a substantial basis for the magistrate's probable cause finding. It explained the facts of the investigation into Chewy and cited the large quantities of drugs and cash found during a search of 1253 Sanchez Street, which it identified as Chewy/Alvarez's suspected residence. Further, Tursi explained that in his experience, drug traffickers use cell phones to communicate, which allowed the inference that there was a fair probability that evidence of a crime would be found on the phones.

Alvarez criticizes the affidavit for failing to include "*any* allegation that 'Chewy' or Mr. Alvarez had used *any* cell phone in connection with *any* criminal activity, drug-related or otherwise." MTS 18. Although the affidavit did not include the earlier facts about the phone calls the CI made to two phone numbers described as Chewy's, the facts about the drugs and cash, coupled with Tursi's observation that cell phones are often used to communicate about drug sales, were enough to support the magistrate's probable cause determination.

Contrary to Alvarez's argument and by contrast with the cases he cites, the affidavit here included more than bare conclusions. In *Underwood*, the affiant referenced a past arrest warrant, his own belief that the defendant was a drug courier, officers' observations of the defendant delivering wooden crates, and the affiant's belief that the crates contained drugs. *United States v. Underwood*, 725 F.3d 1076, 1079 (9th Cir. 2013). Similarly, in *Cervantes*, the affiant failed to provide any of the underlying facts supporting his suspicion that the box in the defendant's possession came from a "narcotics stash location." *United States v. Cervantes*, 703 F.3d 1135, 1139 (9th Cir. 2012). Here, by contrast, the affidavit informed the magistrate judge of drugs that were in fact discovered at Alvarez's residence, not merely Tursi's belief or conclusory assertion that drugs were being stored there. *See Underwood*, 725 F.3d at 1081 ("Conclusions of the affiant unsupported by underlying facts cannot be used to establish probable cause."); *see also United*

---

[8] I do not address his argument that the November 7, 2017 warrant was the fruit of the unlawful searches above because I have determined that those searches were lawful.

*States v. McCain*, 271 F. Supp. 2d 1187, 1195–96 (N.D. Cal. 2003) (finding an affidavit insufficient to support the probable cause finding where the affiant "presented his own interpretations as direct factual evidence" rather than clearly differentiating between the facts and his interpretations). The facts in the affidavit were sufficient to allow the magistrate judge to make an independent probable cause determination.

### b.     Breadth and particularity

Alvarez next argues that the cell phone warrant was overbroad and insufficiently particularized. MTS 19–20. He asserts that the warrant failed to demonstrate probable cause with respect to each category of information listed and that it failed to describe the cell phones to be searched with the particularity required by the Fourth Amendment.

Courts look to the following factors when analyzing whether a warrant was overbroad or insufficiently particular:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant, (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir. 1986) (internal citations omitted). "The particularity requirement safeguards the right to be free from unbounded, general searches." *United States v. McGrew*, 122 F.3d 847, 849 (9th Cir. 1997). The warrant's description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *Spilotro*, 800 F.2d at 963.

The warrant and affidavit here are not overbroad and or lacking in particularity. The warrant identified the two cell phones by reference to their make, their color, the color of their cases, and the fact that they were found on Alvarez. *See United States v. Brobst*, 558 F.3d 982, 991–92 (9th Cir. 2009) ("'It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended.'") (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925)). Although the warrant authorized a search into broad categories of information, it was limited to a period of just over two months. Further, the warrant "attached and incorporated" the Statement of Probable Cause provided by Tursi. *See United*

10

*States v. SDI Future Health, Inc.*, 568 F.3d 684, 699 (9th Cir. 2009). Tursi's affidavit detailed the investigation into Chewy and described the discovery of drugs and money at 1253 Sanchez Street. It noted the various ways in which cell phones can be used, including as part of criminal activity, which supported the specific categories of information the warrant authorized. Finally, Tursi noted his belief based on his training and experience that Alvarez "[was] involved in the sales and distribution of methamphetamine and heroin and that evidence of that criminal activity [could] be found in the stored electronic data accessible from the target cellular telephone seized from him." Together, this information adequately described the location to be searched and the evidence to be seized as required by the Fourth Amendment.

### B. Alvarez's November 1, 2017 Arrest

Alvarez next argues that he was arrested without probable cause when officers confronted him on the sidewalk, ordered him to get on the ground at gunpoint, and handcuffed him.

"There is no bright-line for determining when an investigatory stop crosses the line and becomes an arrest." *United States v. Parr*, 843 F.2d 1228, 1231 (9th Cir. 1988) (internal quotation marks and citation omitted). "[W]hether an arrest has occurred depends on all the surrounding circumstances, and each case must be decided on its own facts." *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995) (noting that factors such as pointing a weapon, ordering a suspect to lie on the ground, and handcuffing do "not automatically convert an investigatory detention into an arrest requiring probable cause").

Given that officers ordered Alvarez to the ground at gunpoint and then handcuffed him, I will assume that he was arrested. But his challenge fails because the arrest was supported by probable cause. There is probable cause to conduct an arrest where officers have reasonably trustworthy information "sufficient to warrant a prudent man in believing that the defendant committed an offense." *United States v. Henderson*, 241 F.3d 638, 648 (9th Cir. 2000) (internal quotation marks omitted). The relevance of flight depends on the circumstances; courts have recognized that innocent people might have reasons to flee, particularly depending on their race. *See, e.g.*, *United States v. Brown*, 925 F.3d 1150, 1155 (9th Cir. 2019) (describing the circumstances of flight in different cases) (expressing concern about allowing flight to "carry the

11

1   day" where "every other fact posited by the government weigh[ed] so weakly in support of

2   reasonable suspicion"). But here, the officers had directly observed events connecting a cell

3   phone number to narcotics trafficking, and then directly observed Alvarez appear to answer the

4   phone at the very moment they called the suspect number. When officers approached Alvarez on

5   the street to execute a search warrant, he immediately fled. These facts were enough to give the

6   officers probable cause to arrest him.

### C. Request for a *Franks* Hearing

Alvarez argues that he is entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) because Tursi's warrant applications recklessly omitted information about the CI's criminal history and reasons to cooperate with the police, even though that information was included in the criminal complaint that initiated this case. MTS 20–22.

"A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). Alvarez bears the burden of proof on both elements. *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002). "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory . . . There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171. "If an informant's history of criminal acts involving dishonesty renders his/her statements unworthy of belief, probable cause must be analyzed without those statements." *Reeves*, 210 at 1044.

Alvarez argues that Tursi recklessly omitted information about the CI's 2015 arrest and the fact that his/her 2017 cooperation was immediately preceded by a second occasion on which the CI was found in possession of drugs. Further, the affidavit did not inform the magistrate judges that the CI was working for compensation. According to Alvarez, this information was necessarily material to the probable cause determination because the CI was integral to the investigation and the affidavits provided no information about his/her reliability or

trustworthiness.

Alvarez is not entitled to a *Franks* hearing for four reasons. First, as detailed above, he overstates the CI's role. Although the CI's information led officers to initiate their investigation, the information they learned during the course of that investigation reduced the CI's importance to a minimum. Because the CI was not material to the probable cause determination for any of the warrants, none of the allegedly missing information would undermine the magistrate judges' ability to make an independent determination or their ultimate findings. Second, the officers' independent investigation corroborated the CI's information and thus allowed a finding that he/she was reliable and trustworthy. Third, it is not clear that these omissions would have misled a magistrate, who is likely to assume that confidential informants have a self-interested motive for helping law enforcement, whether that be compensation or a break in their own criminal cases.[9] *See United States v. Strifler*, 851 F.2d 1197, 1201 (9th Cir. 1988) ("The magistrate would naturally have assumed that the informant was not a disinterested citizen."). Finally, Alvarez's argument that Tursi recklessly omitted this information is conclusory. *See United States v. Collins*, 61 F.3d 1379, 1384 (9th Cir. 1995) (noting that a defendant's "bare assertion" that an omission was deliberate because the agents knew the fact and did not include it failed to "establish that the omission was the result of anything other than negligence or innocent mistake").

## II.     MOTION TO DISCLOSE CONFIDENTIAL INFORMANT

Alvarez moves to disclose the identity of the CI, requesting the following information: (1) the CI's identity, present location, and contact information, (2) all statements the CI made to officers about the investigation or prosecution of him, (3) all records of communications between the CI and Alvarez or any other uncharged co-conspirators, (4) all information about the CI's prior bad acts, (5) all information about payments made by the government to the CI or those close to him/her, (6) information about written agreements or instructions given to the CI by the government, (7) all information regarding promises made to the CI or those close to him/her, (8)

---

[9] Alvarez acknowledged at the hearing that the CI's guilty plea did not occur until 2018, after the issuance of these warrants, but he argued that the CI's criminal history was relevant because his past criminal legal exposure plus his more recent arrest increased his motive to lie.

13

1   all information calling into question the CI's credibility, and (9) any information about the CI's
2   mental impairment or drug/alcohol dependency. Motion to Disclose [Dkt. No. 28].

3   In certain circumstances, the government can withhold from disclosure of the identity of an
4   individual who has provided officers with information about illegal activities. But "[w]here the
5   disclosure of an informer's identity, or of the contents of his communication, is relevant and
6   helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege
7   must give way." *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957). In cases where "the
8   legality of a search without a warrant is in issue and the communications of an informer are
9   claimed to establish probable cause . . . the Government has been required to disclose the identity
10  of the informant unless there was sufficient evidence apart from his confidential communication."
11  *Id.* at 61; *see also United States v. Napier*, 436 F.3d 1133, 1136 (9th Cir. 2006) ("[C]ourts must
12  balance two important considerations: the right announced in *Franks* [*v. Delaware*], on one hand,
13  and the competing interest in keeping confidential the identity of an informant, on the other.").
14  Whether disclosure is required depends on the specific facts of each case in light of the following:
15  "the crime charged, the possible defenses, the possible significance of the informer's testimony,
16  and other relevant factors." *Roviaro*, 353 U.S. at 62.

17  Alvarez is not entitled to the information he seeks. Although the CI's information seeded
18  the investigation that eventually led to Alvarez's arrest, his/her involvement past that point was
19  minimal and not necessary to the probable cause determination. The charges in this case stem not
20  from the CI's information but rather from the drugs and drug paraphernalia found in Alvarez's
21  suspected residence. The CI was not a percipient witness to the charged crimes, and the
22  government does not intend to call him/her as a witness at trial. Oppo. Mot. Disclose 8. Finally,
23  Alvarez did not need to know the CI's identity to challenge to the warrants, as he did in the motion
24  addressed above.

**CONCLUSION**

Alvarez's motions to suppress and to disclose the identity of the confidential informant are DENIED.

**IT IS SO ORDERED.**

Dated: August 13, 2020



William H. Orrick
United States District Judge