ALEJANDRO ALVAREZ
Appearing Pro-Se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALEJANDRO ALVAREZ,<br><br>　　　　Defendant. | No. CR-20-0086-WHO<br><br>**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM**<br><br>Date:　September 29, 2022<br>Time:　1:30 p.m.<br>HON. WILLIAM H. ORRICK |

**INTRODUCTION**

The defendant, proceeding pro-se, files this supplemental sentencing memorandum. The defendant reviewed the substance of this memorandum, through a court-appointed interpreter, with his stand-by counsel in video conferences on September 17, 2022, and September 23, 2022, and requested counsel electronically file this memorandum,

The defendant informs the Court that he has two outstanding objections to the PSR, as set out in his initial sentencing memorandum. In addition, the defendant contends that he is entitled to the application of the "safety valve" provisions of U.S.C.G. § 5C1.2, based on his prior statements regarding this offense to San Francisco law enforcement.

The defendant also asks the Court to consider a variance after application of the mitigating factors contained in 18 U.S.C. § 3553(a).

Alvarez Supp. Sent. Memorandum　　　　　　　　1

# ARGUMENT

## I. This Court Should Grant Defendant's PSR Objections

The defendant has two outstanding objections to the PSR. The defendant objects to the inclusion of the 34.194 grams of cocaine in the offense level calculations, as he was indicted for a methamphetamine offense and the government did not prove at trial that he possessed with intent to distribute any cocaine. The defendant also objects to the inclusion of the two arrests in paragraphs 29 and 30 in the "Other Criminal Conduct" section, as these arrests did not result in any criminal convictions and the defendant contends that their inclusion is prejudicial.

## 2. The Court Should Apply the "Safety Valve"

In addition, the defendant contends that he is entitled to the application of the "safety valve" provisions of U.S.C.G. § 5C1.2, in that (1) he has only 1 criminal history point; (2) he did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense; and (5) the defendant has now made a proffer statement to the government.

A district court "must provide its reasons for applying or declining to apply the safety-valve provision." *United States v. Rangel-Guzman*, 752 F.3d 1222, 1226 (9th Cir. 2014). Where a defendant has truthfully provided all information to the government, other statements do not render him ineligible for the safety valve. See *United States v. Shrestha*, 86 F.3d 935, 940 (9th Cir. 1996) (deeming such a denial "irrelevant" to the safety valve analysis where the defendant has otherwise provided truthful information); see also *United States v. Mejia-Pimental*, 477 F.3d 1100, 1108 (9th Cir. 2007) (holding that the district court erred as a matter of law by denying safety valve relief on improper grounds).

Here, the defendant contends that his proffer interview with the government on September 13, 2022, qualified him for application of the safety valve. The defendant

acknowledged he possessed drugs for distribution on the date in question.

While the government also asked him about other possible drug activities, those activities were outside the scope of the charge in the indictment. Other possible drug activity by Alvarez were immaterial as to whether he truthfully disclosed his knowledge surrounding the charge in the indictment. See *United States v. Gonzalez*, 1998 U.S. App. LEXIS 963 (9th Cir. 1998) ("Thus, the only issue in dispute was whether the defendants had satisfied the fifth requirement which requires complete and truthful disclosure by a defendant of all information he or she has concerning the charged offenses. 18 U.S.C. § 3553(f)(5).").

**3.      Further Factors that the Defendant Requests the Court Consider**

In addition to earlier information proffered to the Court, the defendant requests that the Court consider several additional facts in imposing a fair sentence in this case. The defendant submits these factors support imposing a downward variance after application of the mitigating factors contained in 18 U.S.C. § 3553(a).

First, the defendant asks the Court to grant him credit for time served from November 1, 2017, the date he was first arrested by San Francisco Police for the conduct that is the basis for the charge in the indictment. See PSR ¶ 4, also see U.S.C.G. § 5G1.3. The conduct for which he was jailed in San Francisco is the exact same conduct for which he was tried in this case. He was never convicted or sentenced to any time in the San Francisco Superior Court. He should thus be granted federal credit for the time he spent in pre-trial confinement in San Francisco and Santa Rita, for almost 5 full years of credit.

Second, the defendant wishes the Court to know that he has completed several training and educational courses while at San Francisco County Jail, and has been trusted to work in the meal service at the Santa Rita County jail.

Third, the defendant submits that he will be removed from the United States to his native Mexico following completion of his sentence in this case. His immigration status, or lack thereof, will disqualify him for any sentence reduction under RDAP and will also disqualify him

Alvarez Supp. Sent. Memorandum                    3

from being released early to a residential re-entry center ("halfway house"). The defendant asks the Court to consider this circumstance when sentencing the defendant.

Fourth, because of COVID-19 virus, the restrictions placed on prison visiting, programing, and other activities means that any time in jail now is "hard" time, where all inmates are subject to greater restrictions, reduced programing, and limited or no visitation. The defendant has spent years in local jails under these restrictions since the outbreak of the virus in March 2020. In fact, the defendant has informed standby counsel that he has contracted COVID-19 twice while in custody, and also had gall bladder surgery.

While it is impossible to quantify how much more punitive prison time during the pandemic has been, one court has estimated that individuals incarcerated during the COVID-19 pandemic serve "essentially the equivalent of either time and a half or two times what would ordinarily be served." *United States v. Elias*, 18-CR-33 (NGG), 2022 WL 125721, at *2 (E.D.N.Y. Jan. 13, 2022). The defendant suggests that the Court can consider this additional impact of COVID-19 in determining the appropriate sentence.

## CONCLUSION

The defendant asks this Court to first grant his motion to apply the safety valve, update the PSR, and impose a sentence under the 10 year mandatory minimum, with credit from November 1, 2017.

In addition, the defendant asks that the Court recommend that he be placed in a BOP facility close to the United States/Mexican border so that his family could visit him.

DATED: September 23, 2022.                    Respectfully submitted,


                                              */s/ John J. Jordan*
                                              JOHN J. JORDAN

Alvarez Supp. Sent. Memorandum                4